**UNITED STATES of America,**
**Appellee,**

v.

**Sean KIRKHAM, Defendant–Appellant.**

**Docket Nos. 98–1262, 98–1301.**

United States Court of Appeals,
Second Circuit.

Argued March 23, 1999.

Decided Nov. 9, 1999.

Roger L. Stavis, New York, NY, for Defendant–Appellant.

Michelle L. Adelman, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Emily Berger, Assistant United States Attorney, Brooklyn, NY, of counsel), for Appellee.

Before: FEINBERG, PARKER, and SACK, Circuit Judges.

PARKER, Circuit Judge.

Defendant–Appellant Sean Kirkham appeals from a judgment of conviction entered May 1, 1998, in the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge* ), upon the entry of his plea of guilty. Kirkham was convicted on a one-count information charging him with making false statements to FBI and DEA agents, in violation of 18 U.S.C. § 1001, and on a one-count indictment charging him with failing to appear for sentencing, in violation of 18 U.S.C. § 3146(a)(1). He was sentenced to two consecutive sentences of 33 months and 24 months of imprisonment, respectively, for a total of 57 months, to be followed by two concurrent 3–year terms of supervised release. On appeal, Kirkham initially raised several issues pertaining to his sentence, claiming that: (1) the district court improperly enhanced his offense level based on the erroneous finding that the DEA and FBI agents were the "victims" of his false statements; and (2) the court failed to articulate adequately the grounds for, and justify the extent of, the upward departure.

Following oral argument, this Court requested additional briefing on the issue of whether the two offenses should have been grouped under the Sentencing Guidelines, in light of the fact that 18 U.S.C. § 3146(b)(2) requires that any sentence of imprisonment imposed for failure to appear be made to run consecutively to any other sentence. We find that the two convictions should have been grouped, and that as a result of that grouping, Kirkham should have been sentenced within a single guideline range of 24 to 30 months, the sentences for both convictions running consecutively within that range (aside from any upward or downward departures that may be imposed). We therefore vacate and remand the judgment for resentencing.

## I. FACTUAL BACKGROUND

The facts of this case arise out of the government's investigation of illegal activity at the "Tunnel" nightclub in New York City. In early 1996, Peter Gatien, the owner of the Tunnel, was indicted along with over 20 other defendants on charges related to drug distribution at the nightclub. Defendant–Appellant Kirkham worked as a confidential informant for a brief period during the summer of 1996, assisting the government with its investigation of Gatien and his co-defendants.

Sometime during the summer or fall of 1996, Kirkham approached Gatien's defense attorneys and advised them that he had information concerning government misconduct in the prosecution of Gatien. He claimed he had tape recordings that provided evidence of the alleged misconduct. On September 6, 1996, Gatien's defense attorney related this information to the government, whereupon the government commenced an undercover investigation of Kirkham.

On September 11, 1996, an FBI agent, posing as an investigator employed by Gatien, met with Kirkham to "negotiate" for the purchase of the alleged tape recordings. Kirkham advised the agent that DEA agents had fabricated evidence against Gatien, and that Kirkham had access to government files relating to Gatien by virtue of a romantic relationship he was having with one of the Assistant United

States Attorneys assigned to Gatien's case. He then sold the agent a tape, which he said contained conversations between himself and the DEA agents. Although Kirkham stated that the tape supported his claims of misconduct, in reality, the tape contained only benign conversations. Kirkham continued to have frequent telephone conversations with the FBI agent throughout September and early October 1996, reiterating his claims of DEA misconduct and reasserting that he was having a romantic relationship with a prosecutor.

Kirkham apparently realized soon thereafter that his plan to defraud Gatien's attorneys was not working, so he directed his efforts to defraud elsewhere. On October 15, 1996, Kirkham contacted his DEA controlling agent and claimed that Gatien's investigator (the undercover FBI agent) had contacted Kirkham in the hopes of obtaining information related to the government's investigation. Kirkham was arrested on October 18, 1996, and pleaded guilty that same day to a criminal information charging him with lying to federal agents in violation of 18 U.S.C. § 1001. During his allocution, Kirkham admitted that he had falsely stated there was misconduct by both the prosecutor (the alleged romantic relationship) and DEA agents (the manufacturing of evidence against Gatien), and that he had falsely stated that Gatien's agent had approached him initially.

On July 30, 1997, Kirkham failed to appear at his scheduled sentencing hearing, fleeing to Vancouver, Canada. A warrant was issued for his arrest. From Vancouver, Kirkham made several telephone calls to Gatien's defense attorney, again asserting that he had evidence of government misconduct. Gatien's attorney tape-recorded at least one of these conversations and presented the tape to the government as evidence of misconduct, but an investigation later concluded that Kirkham's claims were without merit.

Kirkham voluntarily surrendered in October 1997. He was subsequently indicted by a grand jury in the Eastern District of New York for intentionally failing to appear before the District Court for sentencing, a violation of 18 U.S.C. § 3146(a)(1). Kirkham pleaded guilty to the indictment on December 18, 1997.

Even after pleading guilty, Kirkham continued to assert that he had had a romantic relationship with a prosecutor and that he had information of DEA misconduct on one occasion making these assertions in a letter to the district court judge. His allegations with regard to the prosecutor eventually prompted an investigation by the Office of Professional Responsibility ("OPR"), which found Kirkham's claims to be false.

The Probation Department, applying the Sentencing Guidelines that became effective on November 1, 1997, calculated the offense levels for each of the two convictions as follows:

| False Statements | | Failure to Appear | |
|---|---|---|---|
| Base Off. Level: | 6 | Base Off. Level: | 6 |
| Planning: | + 2 | Underl. Off.: | + 6 |
| Position of Trust: | + 2 | | |
| Obstruction: | + 2 | TOTAL: | 12 |
| Victim adjustment: | + 3 | | |
| TOTAL: | 15 | | |

The two-level adjustment for obstruction was based on Kirkham's failure to appear for sentencing. *See* U.S.S.G. § 3C1.1. The three-level victim adjustment was imposed pursuant to U.S.S.G. § 3A1.2(a), and was based on the fact that Kirkham's statements had undermined the credibility of government employees, negatively affected the careers of the DEA agents, and had caused the prosecutor professional and personal embarrassment.

Under U.S.S.G. § 3D1.2(c), where one conviction is used to enhance the offense level of the other, the two convictions are normally grouped. Since Kirkham's failure to appear caused a two-level enhancement to be added to his false-statements conviction, the Probation Department grouped his two convictions, giving him an overall offense level of 15. Kirkham's

Criminal History Category was calculated as III, so the applicable guideline range was 24–30 months.

The Probation Department also suggested a possible ground for an upward departure, since Kirkham had continued to make false statements after pleading guilty. Because the Guidelines did not provide a mechanism for considering this behavior as relevant conduct, the Probation Department informed the court that it could consider the conduct as a basis for an upward departure as per Policy Statement section 5K2.0.

Kirkham was sentenced initially on April 24, 1998, before Judge Johnson. The district court apparently did adopt the Probation Department's calculations of the two offense levels as 15 and 12. However, the court did not follow the PSR's recommendation that the two offenses be grouped pursuant to U.S.S.G. § 3D1.2(c). In addition, Judge Johnson imposed an upward departure, stating that

> [i]n this particular instance the allegations made by this defendant [were] outside the heartland of the normal false statement case. It was atypical. His statements, if believed, fraternizing with a prosecutor and illegal acts by DEA agents was unethical conduct and if believed, would be a career ending move. I also think that the statements that the defendant made were egregious, malicious and vicious and they were intentional. So, therefore, I am going to upwardly depart . . .

Judge Johnson then stated that he was sentencing Kirkham to 20 months on the failure-to-appear conviction and 37 months on the false statements conviction, the sentences to run consecutively to each other, for a total of 57 months of imprisonment. He also ordered that the term of imprison-

ment be followed by two concurrent 3–year terms of supervised release.

On May 1, 1998, the district court held an additional hearing to clarify the sentence that it had imposed. At that time, Judge Johnson said that he had adopted the Probation Department's recommendation with respect to the total offense level. He then departed, as to the first conviction (false statements), to impose a period of 33 months of imprisonment, "because this false statement was outside the heartland . . . and it was egregious and malicious . . . ." On the second conviction, he sentenced Kirkham to 24 months, to run consecutive to the 33 months. He added, "I sentence the defendant . . . as I said before I think on the Count 1 it was egregious, malicious and the defendant intended to issue false statements even after he pleaded guilty."

Judgment was entered on May 1, 1998. This appeal followed.

## II. DISCUSSION

### A. *Grouping and Consecutive Sentencing for Failure to Appear*

■ The primary issue on appeal is whether the Sentencing Guidelines required the district court to group Kirkham's offenses and, if so, whether such grouping is consistent with the consecutive sentencing language of 18 U.S.C. § 3146.[1] That statute provides, in pertinent part, as follows:

§ 3146. Penalty for failure to appear

(a) Offense.—Whoever, having been released under this chapter knowingly—

(1) fails to appear before a court as required by the conditions of release; or

(2) fails to surrender for service of sentence pursuant to a court order;

---

1. Although neither party raised this issue in its opening brief, at the Court's request the parties submitted post-argument letter briefs addressing the grouping question. We address this unpreserved argument in order to

avoid the manifest injustice that might otherwise result. *See United States v. Diaz*, 176 F.3d 52, 118 (2d Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 181, —— L.Ed.2d —— (1999).

shall be punished as provided in subsection (b) of this section.

(b) Punishment—

(1) The punishment for an offense under this section is-

(A) if the person was released in connection with a charge of, or while awaiting sentence, surrender for service of sentence, or appeal or certiorari after conviction for-

(i) an offense punishable by death, life imprisonment, or imprisonment for a term of 15 years or more, a fine under this title or imprisonment for not more than ten years, or both;

(ii) an offense punishable by imprisonment for a term of five years or more, a fine under this title or imprisonment for not more than five years, or both;

(iii) any other felony, a fine under this title or imprisonment for not more than two years, or both;

.    .    .    .    .

(2) A term of imprisonment imposed under this section shall be consecutive to the sentence of imprisonment for any other offense.

18 U.S.C. § 3146. Kirkham's failure-to-appear conviction is premised on section 3146(a)(1), and the underlying offense, false statements, falls within section 3146(b)(1)(A)(iii).

There are three Guidelines provisions at issue, all of which interact with each other and with the statute. First, U.S.S.G. § 3D1.1 sets forth the procedure for determining an overall offense level on multiple counts that are grouped. Section 3D1.1(a) of the 1997 Guidelines provides that,

[w]hen a defendant has been convicted of more than one count, the court shall:

(1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.2.

(2) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.

(3) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.

If these rules are applied, the Guidelines require that Kirkham's failure-to-appear conviction be grouped with his false statement conviction, as it is a closely related count. *See* U.S.S.G. § 3D1.2(c) (grouping appropriate when one count is treated as a specific offense characteristic of the other). Taking into account the adjustments recommended by the Probation Department and adopted by the district court, this group would be assigned a combined offense level of 15. *See* U.S.S.G. § 3D1.4 (combined offense level determined by using the highest offense level within that group).

However, the Guidelines also contain exceptions to the grouping rules of section 3D1.1(a). Specifically, section 3D1.1(b) provides that "[a]ny count for which the statute mandates imposition of a consecutive sentence is excluded from the operation of §§ 3D1.2–3D1.5." Instead, "[s]entences for such counts are governed by the provisions of § 5G1.2(a)." U.S.S.G. § 3D1.1(b). Section 5G1.2(a), in turn, provides that "[t]he sentence to be imposed on a count for which the statute mandates a consecutive sentence shall be determined by that statute and imposed independently."

Thus, at first glance, it may appear that the statute at issue, 18 U.S.C. § 3146, mandates that Kirkham's two convictions not be grouped in accordance with U.S.S.G. § 5G1.2(a). As noted at the outset, section 3146(b) requires that any term of imprisonment for failure to appear be consecutive to the sentence for the underlying offense(s). However, a more careful reading of the statute reveals that U.S.S.G. § 5G1.2(a) does not apply. The statute at issue, 18 U.S.C. § 3146, does not specify a set term of imprisonment to be imposed;

instead, it specifically states that a violation may be punished by a fine, imprisonment, or both. *See* 18 U.S.C. § 3146(b). The statute's only requirement is that, *if* a sentence of imprisonment is imposed (as opposed to simply a fine), that sentence must be imposed to run consecutively to any sentence imposed for the underlying offenses. As a result, by their terms, sections 3D1.1(b) and 5G1.2(a) do not apply, and thus the failure-to-appear conviction should be grouped with the underlying offense.

■ Importantly, we note that such a reading of the statute and the 1997 Guidelines is consistent with the Commentary to the 1998 Sentencing Guidelines, which do not differ in substance from the 1997 Guidelines, but which do supply further clarity.[2] Because this Court is required to apply amendments to the Guidelines that clarify their application on direct review, see *United States v. Hendrickson*, 26 F.3d 321, 330 n. 6 (2d Cir.1994); *United States v. Colon*, 961 F.2d 41, 45 (2d Cir.1992), we must consider the scope and effect of the 1998 Guidelines as well.

The 1998 Guidelines contain a specific provision addressing convictions under 18 U.S.C. § 3146 that is consistent with both the Guidelines and the consecutive sentencing language of section 3146(b). Amendment 579 to the 1998 Guidelines contains amendments to sections 3D1.1, 3D1.2, 5G1.2 and 2J1.6, among others. Application Note 3 to U.S.S.G. § 2J1.6 now provides, in relevant part, as follows:

> In the case of a conviction on both the underlying offense and the failure to appear [except with regard to one exception not applicable here], the failure

to appear is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense, and the failure to appear count and the count or counts for the underlying offense *are grouped together under § 3D1.2(c)*. (Note that 18 U.S.C. § 3146(b)(2) does not require a sentence of imprisonment on a failure to appear count, although if a sentence of imprisonment on the failure to appear count is imposed, the statute requires that the sentence be imposed to run consecutively to any other sentence of imprisonment. Therefore, unlike a count in which the statute mandates both a minimum and a consecutive sentence of imprisonment, the grouping rules of §§ 3D1.1—3D1.5 apply. *See* § 3D1.1(b), comment. (n.1), and § 3D1.2, comment. (n.1).) The combined sentence will then be constructed to provide a "total punishment" that satisfies the requirements both of § 5G1.2 (Sentencing on Multiple Counts of Conviction) and 18 U.S.C. § 3146(b)(2). For example, if the combined applicable guideline range for both counts is 30–37 months and the court determines that a "total punishment" of 36 months is appropriate, a sentence of 30 months for the underlying offense plus a consecutive six months' sentence for the failure to appear count would satisfy these requirements.

U.S.S.G. § 2J1.6, Commentary, App. n. 3 (1998)(emphasis added). Thus, the 1998 Guidelines clearly state that a conviction under section 3146 must be grouped with the underlying offense pursuant to the grouping rules of section 3D1.2.

---

**2.** The 1998 version of section 3D1.1(b), in contrast to the 1997 version, provides that in applying the Guidelines, courts should "[e]xclude from the application of §§ 3D1.2–3D1.5 any count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment. Sentences for such counts are counts are governed by the provi-

sions of § 5G1.2(a)." The 1998 version of 5G1.2(a) provides that "[t]he sentence to be imposed on a count for which the statute (1) specifies a term of imprisonment to be imposed; and (2) requires that such term of imprisonment be imposed to run consecutively to any other term of imprisonment shall be determined by that statute and imposed independently."

Furthermore, as the 1998 Guidelines unambiguously state, Amendment 579 in the 1998 Guidelines was intended "to clarify how several guidelines provision, including those on grouping multiple counts of conviction, work together to ensure an incremental, consecutive penalty for a failure to appear count." *See* U.S.S.G. Supplement to App. C, Amendment 579 (1998). Because Amendment 579 is a clarification that must be given effect on direct review, we must vacate Kirkham's sentence and remand to the district court for resentencing in light of this decision and the clarification within the 1998 Guidelines.

As noted above, grouping yields an overall offense level of 15 and, in light of Kirkham's Criminal History Category, a guideline range of 24–30 months. As a result, Kirkham must be sentenced to two consecutive terms of imprisonment, as mandated by 18 U.S.C. § 3146(b)(2) and the Guidelines, but in a way that does not exceed a total imprisonment time of 30 months (aside from any departures the district court may justifiably impose).

■ The district court did not follow these grouping rules when it imposed Kirkham's sentence. Instead, the court appears to have calculated the two sentences separately and imposed them consecutively. Thus, the court sentenced Kirkham to 33 months for his false statements, a sentence which included an upward departure from the otherwise applicable 24–30 month range. It then

sentenced Kirkham to a consecutive 24–month term for his failure to appear.[3] In other words, the district court seems to have been under the impression that, aside from upward or downward departures, the total time of imprisonment had to be between 39 and 51 months, or between 48 and 60 months,[4] depending on the offense level he assigned to the failure-to-appear conviction. Because the Guidelines mandate that the two consecutive sentences be imposed within one applicable Guideline range, in this case 24–30 months, we remand to the district court with instructions to resentence Kirkham within that single range, in accordance with U.S.S.G. § 2J1.6, comment. (n.3).[5] The sentencing court may use any combination of sentences that it deems appropriate, but the total term of imprisonment must fall between 24 and 30 months, aside from any upward or downward departures that may be justifiably imposed.

### B.  *Validity of the Upward Departure*

■ Kirkham next argues that the district court failed to articulate the reason for or justify the extent of the upward departure it imposed. As noted earlier, the district court departed as to the false statements conviction and may have departed as to the failure-to-appear conviction. The government argues that no remand is necessary because Judge Johnson actually made a substantial upward departure on both convictions, and as a result,

3.  It is unclear from the record whether the court assigned the failure-to-appear conviction an offense level of 15, thereby imposing the 24–month sentence within the 24–30 month Guideline range, or whether it assigned the conviction an offense level of 12 and then upwardly departed from the corresponding 15–21 month range.

4.  If the district judge had followed the offense levels for each charge and not imposed any upward departures, the offense level for the false statements charge of 15 would have resulted in a sentence between 24 and 30 months, and the offense level for the failure to appear charge of 12 would have resulted in a sentence between 15 and 21 months. If these

sentences ran consecutively, Kirkham's sentence would have been between 39 and 51 months.

If the judge departed upward from the base offense levels so that the offense level for the false statements offense was 16 and the offense level for the failure to appear was 14, the combined sentence would range from 48 to 60 months.

5.  We note that on remand Kirkham's sentence is governed by the version of the Guidelines in effect at the time of resentencing. *See United States v. Bermudez,* 974 F.2d 12, 14 (2d Cir.1992) (*per curiam* ).

was well within the applicable Guideline range.

We reject this argument in large part because we reject the approach to grouping a conviction under section 3146 favored by some of our sister circuits and the government. *See United States v. Crow Dog,* 149 F.3d 847, 849 (8th Cir.1998); *United States v. Packer,* 70 F.3d 357, 360 (5th Cir.1995). These decisions predate the 1998 Guidelines, which definitely resolve the previous conflict among the circuits regarding the grouping of failure to appear convictions, see U.S.S.G. Supplement to App. C, Amendment 579 (1998) (citing circuit conflict), and which also resolve that Kirkham's failure to appear count should be grouped with his underlying offense. As we have now determined, the district court was operating under a mistaken view of the total guideline range applicable to the grouped offenses. A 57–month total term of imprisonment is an increase of at least 27 months from the applicable Guideline range.

"When the record is ambiguous as to whether a district court has allowed a mistake of law to affect its sentencing decision, we have regularly remanded to allow the court to reconsider its decision in light of our correction of the mistake." *United States v. Montez–Gaviria,* 163 F.3d 697, 703 (2d Cir.1998). Therefore, we remand with instructions to the district court to reconsider the extent of its previous upward departure, to make any adjustments it finds appropriate, and to rearticulate the nature and extent of any upward departure it may choose to make upon resentencing.

The sentencing court is, of course, still free to make any departures it deems to be appropriate, if it finds that either of Kirkham's offenses are distinguishable from the "heartland" of cases covered by the Guidelines, or "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." U.S.S.G. § 5K2.0.

### C. *Validity of the Victim–Impact Adjustment*

Finally, Kirkham contends that the district court improperly enhanced the offense level for his false statements conviction, pursuant to U.S.S.G. § 3A1.2(a), based on the erroneous finding that the government agents involved were "victims" of that offense. His argument is that the only victim of his false statements was the government itself, and that the individual government agents suffered only indirect harm.

We find this argument to be without merit. There was a sufficient showing that the DEA agents Kirkham accused of misconduct suffered adverse professional consequences as a direct result of Kirkham's false statements. This was a sufficient basis on which to apply the three-level enhancement, and we affirm the district court's sentence insofar as it imposed a three-level enhancement on the false statements conviction.

### III. CONCLUSION

We find that the sentencing court improperly failed to group Kirkham's failure-to-appear conviction with his false statements conviction. Because the record is ambiguous as to whether the district court allowed this error to affect the extent of its upward departure, we are unable to evaluate Kirkham's challenges thereto. We therefore VACATE the sentence and REMAND for resentencing consistent with this opinion.